1   **BERGMAN & GUTIERREZ LLP**
2   PENELOPE P. BERGMAN, ESQ., SBN 220452
    penelope@b-g-law.com
3   DEBORAH P. GUTIERREZ, ESQ., SBN 240383
    deborah@b-g-law.com
4   AMANDA L. GRAY, ESQ., SBN 244644
5   amanda@b-g-law.com
    880 Apollo Street, Suite 334
6   El Segundo, CA 90245
    T: (310) 893-6200; F: (310) 988-2930
7

8   Attorneys for Plaintiff,
    Adrienne Akinsete
9

10              **UNITED STATES DISTRICT COURT**

11             **NORTHERN DISTRICT OF CALIFORNIA**

12

13   ADRIENNE AKINSETE, an individual,          Case No. 5:14- CV- 03947- EJD

14                    Plaintiff,                 Hon. Edward J. Davila
                                                 Dept. 4
15           vs.

16   WELLS FARGO BANK, N.A.;                     **PLAINTIFF'S OPPOSITION TO**
17   REGIONAL TRUSTEE SERVICES                   **DEFENDANT WELLS FARGO**
     CORPORATION;  Does 1-10,                    **BANK N.A.'S MOTION TO**
18                                               **DISMISS PLAINTIFF'S FIRST**
                                                 **AMENDED COMPLAINT**
19                    Defendants.
20                                               **DATE:  January 30, 2015**
                                                 **TIME:  9:00 AM**
21                                               **CTRM:  4 ( 5th Floor)**

22
                                                 Complaint filed: July 28, 2014
23                                               Notice of Removal Filed:  August 29,
                                                 2014
24                                               Trial Date:  Not set

25

26

27

28
                                    -i-

1     Plaintiff ADRIENNE AKINSETE ("Plaintiff") by and through her attorneys of

2   record hereby opposes Defendant WELLS FARGO BANK, N.A.'s ("Defendant")

3   Motion to Dismiss the First Amended Complaint, on the grounds that the Complaint

4   sufficiently pleads facts in support of Plaintiff's claim as required by Federal Rule of

5   Civil Procedure 12(b)(6).

6     This opposition is based on the First Amended Complaint, the records on file in

7   this action, and any further briefs, evidence, authorities or arguments presented at or

8   before the hearing on this Motion.

9

10  November 3, 2014                    **BERGMAN & GUTIERREZ LLP**

11

12                                      By:   */s/ Amanda L. Gray*
                                             Penelope P. Bergman
13                                           Deborah P. Gutierrez
                                             Amanda L. Gray
14                                           Attorneys for Plaintiff,
                                             Adrienne Akinsete
15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1
2
## **TABLE OF CONTENTS**

3
I.     INTRODUCTION ......................................................................................i

4
II.    LEGAL STANDARD ...............................................................................1

5
III.   STATEMENT OF FACTS........................................................................2

6
7
IV.    LEGAL ARGUMENT ..............................................................................4

8
       A.    HOLA Preemption Does Not Apply ...............................................4

9
             1.    The National Banking Act And OCC Regulations Are The
10
                   Proper Preemption Analysis .......................................................4

11
             2.    Plaintiff's Claims Involving Wells Fargo's Conduct After it
12
                   Acquired the Loan Are Not Governed by HOLA .....................5

13
             3.    The Purported Authority Cited by Defendant Does Not
14
                   Support HOLA Preemption .......................................................7

15
             4.    Even if HOLA were the correct analysis Plaintiff's Claims are
16
                   Not Preempted under HOLA .....................................................8

17
       B.    Plaintiff Has Sufficiently Stated a Claim for Violation of the HBOR 10
18
             1.    Defendant's HBOR Violations are Material ............................12

19
20
             2.    Plaintiff is not Stripped of her Rights under the HBOR Simply
21
                   Because she is in Default .........................................................13

22
       C.    Plaintiff Has Sufficiently Stated a Claim for Negligent
23
             Misrepresentation.................................................................................13

24
             1.    Application of the *Biakanja* Factors Gives Rise to a Duty of
25
26
                   Care ..........................................................................................14

27
28
**TABLE OF CONTENTS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.   Plaintiff Has Sufficiently Stated a Claim for Violation of Business & Professions Code Section 17200 ........................................................ 17

1.   Plaintiff Has Standing Under the UCL ..................................... 18

V.   CONCLUSION ............................................................................................ 19

**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. U.S. Bank, N.A.*,

   653 F. 3d 912, (9th Cir. 2011)................................................................................. 4

*Albizo v. Wachovia Mortg.*,

   2012 WL 1413996, at *15 (E.D. Cal. Apr. 20, 2012)................................................. 5

*Alvarez v. BAC Home Loans Servicing, L.P.*,

   2014 WL 3883282, *5 (Cal. Ct. App. Aug. 7, 2014, A138443) ..................... 14, 15, 16

*Bell Atlantic Corp. v. Twombly*,

   55 U.S. 544 (2007) .................................................................................................... 2

*Berryman v. Merit Property Management, Inc.*,

   152 Cal.App. 4th 1544, (2007) ............................................................................... 18

*Biakanja v. Irving*,

   49 Cal.2d 647 (1958)............................................................................................... 14

*Boschma v. Home Loan Center, Inc.*

   198 Cal.App.4th 230 (2011) ................................................................................... 18

*Cervantes v. City of San Diego*,

   5 F.3d 1273 (9th Cir. 1993)....................................................................................... 1

*Conley v. Gibson*,

   355 U.S. 41 (1957) .................................................................................................... 1

*Conner v. Great Western Sav. & Loan Assn.*

   (1968) 69 Cal.2d 850............................................................................................... 14

*Corral v. Select Portfolio Servicing, Inc.*,

   No. 14-CV-02251-MEJ, 2014 WL 3900023, at *4 (N.D. Cal. Aug. 7, 2014) ............. 7

*DeLeon v. Wells Fargo Bank, N.A.*,

   729 F. Supp. 2d 1119 (N.D. Cal. 2010) ................................................................. 5, 6

*Faulks v. Wells Fargo & Company*,

   13-CV-02871-MEJ, 2014 WL 1922185 (N.D. Cal., May 13, 2014)........................... 6

**TABLE OF AUTHORITIES**

*Fernandez v. Wells Fargo Bank, N.A.,*

    2012 WL 5350256, at *5-6 (N.D. Cal. Oct. 29, 2012............................................. 9, 10

*Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn.,*

    52 Cal.App.3d at pp.488 ........................................................................... 14

*Garcia v. Ocwen Loan Servicing, LLC,*

    2010 WL 1881098, at *2–3 (N.D.Cal ................................................... 15, 16

*Gerber v. Wells Fargo Bank, N.A.,*

    No. 11-01083-PHX-NVW, 2012 WL 413997, *4 (D. Ariz. Feb. 9, 2012) ............. 5, 7

*Gray v. Broder,*

    109 Cal.App.3d at pp.73-74 ...................................................................... 14

*Harris v. Wells Fargo Bank, N.A.,*

    2013 WL 1820003, at *5-7 (N.D. Cal. Apr. 30, 2013 ........................................ 9, 10

*Hartford Fire Ins. Co. v. California,*

    509 U.S. 764 (1993) ................................................................................ 1

*Higley v. Flagstar Bank, FSB,*

    910 F. Supp. 2d 1249 (D. Or. 2012) ........................................................... 10

*Hixson v. Wells Fargo Bank NA,*

    No. C 14-285 SI, 2014 WL 3870004, at *3 (N.D. Cal. Aug. 6, 2014) ..................... 6

*Hopkins v. Wells Fargo Bank, N.A.,*

    No. 2:13-00444 WBS, 2013 WL 2253837, *3 (E.D. Cal. May 22, 2013) ................. 7

*Gilead Sciences Securities Litigation,*

    536 F.3d 1049 (9th Cir. 2008)................................................................... 2

*Jolley v. Chase Home Finance, LLC,*

    213 Cal. App. 4th 872 (2013) ......................................................... 11, 14, 15

*Kwikset Corp. v. Superior Court,*

    51 Cal.4th 310 (2011) ............................................................................ 18

*Leghorn v. Wells Fargo Bank, N.A.,*

    950 F. Supp. 2d 1093 (N.D. Cal. 2013) ........................................................ 7

**TABLE OF AUTHORITIES**

*Loder v. World Savings Bank, N.A.*,

    2011 WL 1884733, at *7 (N.D. Cal. May 18, 2011) .................................................. 10

*Mabry v. Superior Court*,

    185 Cal. App. 4th 208 (2010) ................................................................................. 9, 11

*McKinley v. CitiMortgage, Inc.*,

    No. 13-CV-1057 TLN-CKD, 2014 WL 651917, at *5-7 (E.D. Cal. Feb. 19, 2014) . 13

*Nymark v. Heart Fed. Savings & Loan Assn.*,

    231 Cal. App. 3d 1089, (1991)............................................................................ 14, 15

*Ortiz v. Wells Fargo Bank, N.A.*,

    2011 WL 4952979, at *2-4 (N.D. Cal. May 27, 2011).................................... 9, 10, 11

*Osorio v. Wells Fargo Bank*,

    2012 WL 1909335, at *2 (N.D. Cal. May 24, 2012) ...................................... 9, 10, 11

*Penermon v. Wells Fargo Bank, N.A.*,

    No. 14-CV-00065-KAW, 2014 WL 2754596 (N.D. Cal., June 11, 2014).............. 6, 8

*Pey v. Wachovia Mortg.*,

    2011 WL 5573894, at *8 (N.D. Cal. Nov. 15, 2011) ............................................ 9, 11

*Rhue v. Wells Fargo Bank, N.A.*,

    No. CV 12-05394 DMG (VBKx), 2012 WL 8303189, *2–3 (C.D. Cal. Nov. 27, 2012)............................................................................................................................ 6, 7

*Rijhwani v. Wells Fargo Home Mortgage, Inc.*,

    No. C 13-05881 LB, 2014 WL 890016, *6 (N.D. Cal., Mar. 3, 2014) .......... 1, 6, 7, 11

*Rijhwani v. Wells Fargo Home Mortgage, Inc.*,

    No. C 13-05881 LB, 2014 WL 890016, *7 (N.D. Cal., Mar. 3, 2014) ....................... 6

*Rodriguez v. U.S. Bank Nat. Ass'n*,

    No. 12-00989 WHA, 2012 WL 1996929, *7 (N.D. Cal. June 4, 2012) ...................... 7

*Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299 (2014) ..................................... 14, 16

*Sese v. Wells Fargo Bank Bank, N.A.,*

    2013 WL 3328686 (Cal. Super. Ct. July 1, 2013) ....................................................... 9

*Shaterian v. Wells Fargo Bank*,

**TABLE OF AUTHORITIES**

2011 WL 2314151, at *4, n.8 (N.D. Cal. June 10, 2010) ....................................... 9, 11

*Silvas v. E\*Trade Mortg. Corp.*,

514 F.3d 1001, 1005 (9th Cir. 2008) ........................................................................ 9

*Valtierra v. Wells Fargo Bank, N.A.*,

No. 1:10-0849, 2011 WL 590596, *4 (E.D. Cal. Feb. 10, 2011) ................................ 7

*Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*,

196 Cal. App. 4th 1572 (2011) ............................................................................... 16

*Withers v. J.P. Morgan Chase Bank N.A.*, No. C 14-0351 SBA, 2014 WL 3418367, at *5 (N.D. Cal. July 11, 2014) .................................................................................... 13

**Statutes**

12 C.F.R. § 560.2(c)(2) ................................................................................................ 10

12 U.S.C. § 1465(a) (2012) ........................................................................................... 5

Cal. Civ. Code § 2923.6(c) .......................................................................................... 11

Cal. Civ. Code § 2923.6(c)(1) ..................................................................................... 10

Cal. Civ. Code § 2923.6(f) ........................................................................................... 12

Cal. Civ. Code § 2924.12 ............................................................................................. 12

California Business and Professions Code section 17200 ("Section 17200") ....... 7, 17, 18

Civil Code § 2923.5 ....................................................................................................... 9

Civil Code § 2923.6 ....................................................................................... 5, 7, 9,  10

**TABLE OF AUTHORITIES**

## MEMORANDUM ON POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Adrienne Akinsete ("Plaintiff") asserts claims against Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant"), for its negligent and deceptive mishandling of her loan modification.  Specifically, Plaintiff asserts that Defendant engaged in unlawful conduct when it made recurrent misrepresentations about her loan modification application, including that it was reviewing her for its available modification programs, while simultaneously dual-tracking her in foreclosure.   Not only is Defendant's conduct in direct violation of California's Home Owner's Bill of Rights, its recurrent false representations have caused Plaintiff substantial harm, including loss of her opportunity to pursue other loss mitigation alternatives.  Plaintiff does *not* allege Defendant was required to offer, consider or approve a loan modification if she did not qualify for one (which she did).  Rather, Defendant owed her a duty not to misrepresent the truth in the context of loan modification negotiations.

Rather than address Plaintiff's factual allegations, Defendant spends much of its Motion attempting to distract the Court with a preemption argument.  Recent decisional authority makes clear that The Home Owner's Loan Act ("HOLA") preemption is not absolute and HOLA does not apply to Wells Fargo under the circumstances of this case. *See Rijhwani v. Wells Fargo Home Mortgage, Inc*., No. C 13-05881 LB, 2014 WL 890016, *6 (N.D. Cal., Mar. 3, 2014).

For purposes of a Motion to Dismiss, Plaintiff has stated each of her claims, and Defendant's Motion should be denied in its entirety.

## II.   LEGAL STANDARD

The standard for dismissal under Rule 12(b)(6) is a stringent one.  "[A] complaint should not be dismissed for failure to state a claim unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego*, 5 F.3d 1273,

-1-

1274 (9th Cir. 1993) (emphasis added).  The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The U.S. Supreme Court has held that to survive a motion to dismiss, a complaint must contain sufficient factual matter which, ***accepted as true***, would "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 55 U.S. 544 (2007).

A motion to dismiss pursuant to Rule 12(b)(6) is *not* a procedure for resolving contested facts or the merits of the case.  "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, [a] court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds."  *In re Gilead Sciences Securities Litigation*, 536 F. 3d 1049, 1057 (9th Cir. 2008).

## III.   <u>STATEMENT OF FACTS</u>

At all relevant times, Wells Fargo has been the servicer of Plaintiff's mortgage loan ("Loan").  (FAC, ¶4).

Wells Fargo advertises that it has "multiple loan modification programs available" for borrowers in different situations, which are "meant to help people keep their homes" and invites borrowers to apply.  (FAC, ¶5).  Pursuant thereto, on or around May 22, 2014 with the assistance of a third party representative, Plaintiff submitted a complete loan modification application to Wells Fargo.  (FAC, ¶6).

On or around June 4, 2014, Plaintiff received Wells Fargo correspondence dated May 26, 2014 (Memorial Day), acknowledging receipt of Plaintiff's loan modification application, and requesting additional information to "help [it] better understand [Plaintiff's] financial situation."  Wells Fargo misrepresented to Plaintiff that she had until August 24, 2014 to provide the additional information.  (FAC, ¶7).  Although Plaintiff promptly complied with each of Wells Fargo's additional/supplemental requests for information (FAC, ¶8), on June 9, 2014, Wells Fargo advanced foreclosure proceedings by filing a Notice of Trustee's Sale.  (FAC, ¶9).

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

On July 1, 2014, Plaintiff's representative sent a letter via facsimile to Wells Fargo's agent and the foreclosing trustee, Regional Trustee Services Corporation, placing Wells Fargo and Regional Trustee on notice that any trustee's sale would constitute a violation of California's Home Owner's Bill of Rights. (FAC, ¶10).

Shortly thereafter, on or around July 22, 2014, Defendant denied Plaintiff for a "proprietary step rate program" modification on the basis that Plaintiff's "financial situation shows that [she] ha[s] the ability to make [her] mortgage payment." (FAC, ¶11).[1] Defendant further falsely represented to Plaintiff that it "moved to evaluate [her] for the next available program based on [the] information and the qualifications associated with [her] loan." (FAC, ¶12). To date, Defendant has not provided any information further describing the "next available program" or the steps necessary for Plaintiff to be considered for the "next available program," and there has been no decision on its purported evaluation of the "next available program." (FAC, ¶12).

In order to prompt Defendant for the further review, Plaintiff submitted an appeal form that had been provided by Defendant and requested that Defendant provide information pertaining to the "next available program(s)." (FAC, ¶13). On or around August 28, 2014, Defendant sent a form letter, falsely representing to Plaintiff that after "carefully reviewing the information we currently have," we have determined that you still do not meet the requirements for a loan modification. To date, Defendant has failed to provide any clarification as to the basis for the denial or any response as to its purported review of its available modification programs. (FAC, ¶14).

Defendant's wrongful conduct has been specifically outlawed by the legislature through the Homeowner's Bill of Rights. Specifically, Wells Fargo dual tracked Plaintiff's Loan by recording a Notice of Trustee's Sale while Plaintiff's loan

---

[1] Defendant's decision on the "step rate" modification has been subsequently contradicted by Defendant's agent, which now claims Plaintiff would not be able to qualify for a modification based on her inability to afford a modified payment. Plaintiff requests leave to amend, if necessary, to add additional facts pertaining to Defendant's purported modification review.

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1    modification application was pending, and has continued to dual track Plaintiff's Loan

2    without providing Plaintiff a written determination of her loan modification application.

3    (FAC, ¶15).

4          As a result of Wells Fargo's misconduct, Plaintiff has suffered damages including

5    improper assessment of interest, late fees, foreclosure fees and other improper amounts;

6    damage to her credit; protracted financial and emotional distress; inability to obtain loss

7    mitigation assistance for which she qualified; and other monetary loss.  (FAC, ¶16).

8    IV.   **LEGAL ARGUMENT**

9          A.    **HOLA Preemption Does Not Apply**

10         Wells Fargo urges the Court to analyze preemption of Plaintiff's state law claims

11   under the Home Owners Loan Act ("HOLA") and its attendant Office of Thrift

12   Supervision ("OTS") regulations (Motion, 2:18-14:22).  This analysis is wrong for two

13   reasons: (1) the National Banking Act, not HOLA, applies here because Wells Fargo is a

14   national bank and Wells Fargo's only ground for preemption arises from the National

15   Banking Act (NBA); and (2) Plaintiff's claims survive preemption even if HOLA is the

16   correct analysis.

17              1.    **The National Banking Act And OCC Regulations Are The**

18                    **Proper Preemption Analysis**

19         Preemption of state law by national banks is analyzed under the OCC conflict

20   preemption standards set forth in the NBA.  *See Aguayo v. U.S. Bank, N.A.*, 653 F. 3d

21   912, 921-22 (9th Cir. 2011).  In this case, Plaintiff's Loan was originally held by World

22   Savings Bank, which became Wachovia, which eventually merged with Wells Fargo

23   (Motion, 3:4-10; RFJN, Ex. D).  Because Wells Fargo currently holds the Loan, is

24   directly responsible for the foreclosure process, and is a national bank, the NBA and

25   OCC regulations apply.  The fact that the Loan originated with World Savings, a federal

26   savings association, does nothing to change this analysis.[2]  The central allegations in this

27   ─────────────────

28   [2] The court in *Gerber v. Wells Fargo Bank, N.A.*, criticized the cases relied on by Wells
     Fargo to support the claim that World Savings and Wachovia somehow bestow HOLA

-4-

1   case—Wells Fargo's misrepresentations and noncompliance with Civil Code § 2923.6—

2   are attributable solely to the foreclosure actions and loss mitigation activity of Wells

3   Fargo and has nothing to do with the origination activity of World Savings.  *See Gerber*

4   *v. Wells Fargo Bank, N.A,*, 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012).  Because

5   Wells Fargo is a national bank, regulated by the NBA and OCC, a HOLA preemption

6   analysis is inappropriate to evaluate the type of conduct at issue.   Even if Wells Fargo

7   were correct that the preemption analysis applicable to federal savings associations is

8   appropriate here, its reliance on the HOLA preemption standard is misplaced because

9   Congress amended HOLA in 2011 as a part of the Dodd-Frank Wall Street Reform and

10  Consumer Protection Act to conform HOLA preemption standards to the NBA conflict

11  preemption standard.  *See* 12 U.S.C. § 1465(a) (2012) ("Any determination by a court . .

12  . regarding the relation of State law to [federal savings associations] shall be made in

13  accordance with the laws and legal standards applicable to national banks regarding the

14  preemption of State law.").

15          2.      **Plaintiff's Claims Involving Wells Fargo's Conduct After it**

16                  **Acquired the Loan Are Not Governed by HOLA**

17          To argue that Wells Fargo is entitled to HOLA preemption, Wells Fargo relies

18  almost exclusively on a line of cases beginning with *DeLeon v. Wells Fargo Bank, N.A*.,

19  729 F. Supp. 2d 1119 (N.D. Cal. 2010). The problem with this line of cases is that

20  neither the *DeLeon* court, nor any of the subsequent courts that rely on this one decision,

21  made any attempt at statutory analysis.  *DeLeon*'s oft-quoted conclusion that "the same

22  [HOLA] preemption analysis would apply to any alleged conduct [of a national bank]

23

24

---

25  preemption to Wells Fargo because the "cases cite either (a) nothing, (b) each other, or
    (c) generic statements of law about corporations succeeding to the rights of the entities
26  they acquire." 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012). As the court noted,
    "preemption is not some sort of asset that can be bargained, sold, or transferred." *Id.*;
27  *See also Albizo v. Wachovia Mortg*., 2012 WL 1413996, at *15 (E.D. Cal. Apr. 20,
    2012) (HOLA is not a privilege that can "trickle[…down" to a loan's successor in
28  interest).

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

after [the bank's merger with a FSB]," cites no case law or provides any analysis. *DeLeon*, 729 F. Supp. 2d at 1126.

Every court that has recently analyzed the split in case law has correctly determined that post-merger conduct of a national bank is not preempted. Indeed, HOLA preemption applies "only to *conduct occurring before* the loan changed hands from the federal savings association or bank to the entity not governed by HOLA." *Rijhwani v. Wells Fargo Home Mortgage, Inc*., No. C 13-05881 LB, 2014 WL 890016, *6 (N.D. Cal., Mar. 3, 2014); *Hixson v. Wells Fargo Bank NA*, No. C 14-285 SI, 2014 WL 3870004, at *3 (N.D. Cal. Aug. 6, 2014); *Faulks v. Wells Fargo & Company*, 13-CV-02871-MEJ, 2014 WL 1922185 (N.D. Cal., May 13, 2014); *Penermon v. Wells Fargo Bank, N.A.*, No. 14-CV-00065-KAW, 2014 WL 2754596 (N.D. Cal., June 11, 2014). As the court in *Rhue v. Wells Fargo Home Mortgage, Inc.,* 2012 WL 8303189 (C.D.Cal. Nov. 27, 2012) explained:

> The important consideration is the nature of the alleged claims that are the subject of the suit. The governing laws would be those applicable to [World Savings Bank] at the time the alleged misconduct occurred. Wells Fargo, being the successor corporation to Wachovia Mortgage and thus [World Savings Bank], succeeds to those liabilities, whatever the governing law at that time may be. Therefore, [World Savings Bank's] conduct before its merger with Wells Fargo on November 1, 2009 would be governed by HOLA where appropriate, while Wells Fargo's own conduct after that date would not.

2012 WL 8303189, at *3.

As articulated in *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, in determining the correct preemption analysis to apply, the important consideration is not when a loan was originated, it is when the alleged misconduct occurred. *Rijhwani v. Wells Fargo Home Mortgage, Inc.*, No. C 13-05881 LB, 2014 WL 890016, *7 (N.D. Cal., Mar. 3, 2014). Where the wrongful conduct alleged occurred <u>after</u> the loan changed hands from the federal savings association or bank to the entity not governed by HOLA (as is the case here), HOLA rules of preemption do <u>not</u> apply. *Id.* (citing *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1107–08 (N.D. Cal. 2013); *Corral v. Select Portfolio*

-6-

1   *Servicing, Inc.*, No. 14-CV-02251-MEJ, 2014 WL 3900023, at *4 (N.D. Cal. Aug. 7,

2   2014); *Hopkins v. Wells Fargo Bank, N.A.*, No. 2:13-00444 WBS, 2013 WL 2253837,

3   *3 (E.D. Cal. May 22, 2013); *Rhue v. Wells Fargo Bank, N.A.*, No. CV 12-05394 DMG

4   (VBKx), 2012 WL 8303189, *2–3 (C.D. Cal. Nov. 27, 2012); *Rodriguez v. U.S. Bank

5   Nat. Ass'n*, No. 12-00989 WHA, 2012 WL 1996929, *7 (N.D. Cal. June 4, 2012);

6   *Gerber v. Wells Fargo Bank, N.A.*, No. 11-01083-PHX-NVW, 2012 WL 413997, *4 (D.

7   Ariz. Feb. 9, 2012).; *Valtierra v. Wells Fargo Bank, N.A.*, No. 1:10-0849, 2011 WL

8   590596, *4 (E.D. Cal. Feb. 10, 2011).  "This is because 'preemption is not some sort of

9   asset that can be bargained, sold, or transferred....'" *Id.* (citing *Gerber*, 2012 WL

10  413997, at *4).

11        Plaintiff's claims for violation of Civil Code Section 2923.6, negligent

12  misrepresentation and violation of Business and Professions Code Section 17200 et. seq

13  involve wrongful conduct alleged by Plaintiff, which began in 2014, several years after

14  Wachovia converted to a national bank, changed its name and then merged into Wells

15  Fargo.  "This means that Wells Fargo, which is not a federal savings association or

16  bank, may not assert HOLA preemption in this particular action."  *Rijhwani*, 2014 WL

17  890016, at *7.

18        **3.**   <u>**The Purported Authority Cited by Defendant Does Not Support**</u>

19              <u>**HOLA Preemption**</u>

20        Wells Fargo cites a 2003 opinion letter from the OTS that provides that a New

21  Jersey state law is partially preempted by HOLA when applied to federal savings

22  associations.  (Motion, 6:2-22; RFJN, Ex. J).  However, the opinion letter was issued at

23  the request of a federal savings association to address the question of whether federal

24  law preempts the recently enacted law.  Moreover, the letter *does not* address whether

25  HOLA preemption applies to the actions of national banks that acquire federal savings

26  loans, as Defendant suggests.  In fact, the letter addressed the objective of HOLA

27  preemption, stating that "Congress gave OTS, not the States, the task of determining the

28  best practices for federal savings associations and creating uniform rules.  OTS conducts

1   regular examinations of thrift lending operations for safety and soundness and

2   compliance with established consumer protections."  (RFJN, Ex. J, p. 5).  Wells Fargo is

3   not regulated by OTS, and the OTS does not ensure Wells Fargo's "compliance with

4   established consumer practices."  Thus, the objective articulated in the 2003 opinion

5   letter does not apply here.  *See Penermon*, 2014 WL 2754596 at *7.

6          Wells Fargo further contends that HOLA preempts state law on the grounds that

7   Plaintiff agreed in the trust deed that the Loan would be governed by HOLA, whether it

8   was held by the originating lender or its successor.  (Motion, 8:21-10:6).  Defendant's

9   position would effectively grant it blanket immunity, even though it is not a federal

10  savings bank, by simply concluding that an automatic HOLA preemption applies to

11  loans originated by a federal savings bank.  As one court noted, "[t]o find that some

12  homeowners cannot avail themselves of HBOR protection based solely on their original

13  lender, and without regard to the entity engaging in the otherwise illegal conduct, is

14  arbitrary at best, and, at worst, could result in a gross miscarriage of justice, while also

15  running afoul of one of the original purposes of HOLA enactment: consumer

16  protection."  *Penermon*, 2014 WL 2754596 at *8.

17         As all of the wrongful conduct alleged by Plaintiff was done by Wells Fargo in

18  2014, well after Wachovia merged into Wells Fargo, Wells Fargo, which is not a federal

19  savings association or bank, may not assert HOLA preemption in this action.

20         **4.**     **<u>Even if HOLA were the correct analysis Plaintiff's Claims are</u>**

21                   **<u>Not Preempted under HOLA</u>**

22         Even if the HOLA applied to Plaintiff's claims against Wells Fargo (which it does

23  not), Plaintiff's claims would still not be preempted.  Under the HOLA, a state law is

24  not preempted if (1) it is not listed within the express preemption clause or (2) it has

25  only an incidental effect on lending.  *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001,

26  1005 (9th Cir. 2008) (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30,

27  1996)).  Because Civil Code § 2923.6 and Plaintiff's related claims do not regulate

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

servicing and only have an incidental effect on lending, the claims avoid preemption under either criteria.

a.   <u>**Plaintiff's Claims Are Not Expressly Preempted by OTS Regulations Because They Do Not Regulate Mortgage Servicing or Terms of Credit**</u>

Because Civil Code § 2923.6 only regulates the foreclosure process, it does not fall within the express preemption categories of the OTS regulations.  *See Harris v. Wells Fargo Bank, N.A.*, 2013 WL 1820003, at *5-7 (N.D. Cal. Apr. 30, 2013) (finding Civil Code § 2923.5 not preempted by HOLA); *Fernandez v. Wells Fargo Bank, N.A.*, 2012 WL 5350256, at *5-6 (N.D. Cal. Oct. 29, 2012); *Osorio v. Wells Fargo Bank*, 2012 WL 1909335, at *2 (N.D. Cal. May 24, 2012); *Pey v. Wachovia Mortg.*, 2011 WL 5573894, at *8 (N.D. Cal. Nov. 15, 2011); *Ortiz v. Wells Fargo Bank, N.A.*, 2011 WL 4952979, at *2-4 (N.D. Cal. May 27, 2011); *Shaterian v. Wells Fargo Bank*, 2011 WL 2314151, at *4, n.8 (N.D. Cal. June 10, 2010); *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 230 (2010) (holding Section 2923.5 is not preempted by HOLA because the statute only regulates the foreclosure process); *Sese v. Wells Fargo Bank Bank, N.A.,* 2013 WL 3328686 (Cal. Super. Ct. July 1, 2013) (rejecting Wells Fargo's argument that the additional remedies in Civil Code § 2923.6 warrants a different preemption analysis under *Mabry*).  Section 2923.6 simply requires a mortgagee to follow certain guidelines and make a "written determination" that the modification has been approved or denied before moving forward with the foreclosure process.  *See* Cal. Civ. Code § 2923.6(c)(1). Nothing in the statute requires Wells Fargo to modify its loan origination or servicing practices outside of the foreclosure process.

Indeed, to interpret "servicing" to include "foreclosure," as Wells Fargo argues, would likely result in the preemption of every state law regarding foreclosure. *See Loder v. World Savings Bank, N.A.,* 2011 WL 1884733, at *7 (N.D. Cal. May 18, 2011). Yet "[w]ere it not for the fact that California chose to permit non-judicial foreclosures in the first place, the lender would not have that power." *Ortiz v. Wells Fargo Bank*, 2011 WL

4952979, at *3 (N.D. Cal. May 27, 2011); *see also Osorio v. Wells Fargo Bank*, 2012 WL 1909335, at *2 (N.D. Cal. May 24, 2012) ("[a] lender cannot on the one hand rely on California law as the foundation for its right to conduct a non-judicial foreclosure, while on the other hand ignore any restrictions or procedural requirements that are part of that process under California law.").  Paradoxically, a finding of preemption would leave federal savings associations with no option at all to foreclose a trust deed or mortgage.  That result is inconsistent with OTS's stated objective of providing federal savings associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."  12 C.F.R. § 560.2(a); *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249, 1260 (D. Or. 2012).  Such a result could not have been intended by Congress. *Id.*

### b.   Plaintiff's Claims Come Within the Regulation's Savings Clause

Even if Section 2923.6 regulated "servicing," the regulation's savings clause would still "save" it from preemption.  The OTS regulation expressly exempts state real property laws from preemption as a type of law that has only an incidental effect on lending. 12 C.F.R. § 560.2(c)(2). As foreclosure on a deed of trust only concerns title to real property, foreclosure statutes such as Civil Code § 2923.6 are among the categories of laws included in the savings clause.  Section 2923.6 is therefore "saved" and not preempted. *See Harris v. Wells Fargo Bank, N.A.*, No. 12-cv-05629-JST, 2013 WL 1820003, at *5-7 (N.D. Cal., Apr. 20, 2013); *Fernandez v. Wells Fargo Bank, N.A.,* No. 12-cv-03941-NC, 2012 WL 5350256, at *5-6 (N.D. Cal., Oct. 29, 2012; *Osorio v. Wells Fargo Bank, N.A.*, No. C 12-02645-RS, 2012 WL 1909335, at *2 (N.D. Cal., May 24, 2012); *Pey*, 2011 WL 5573894, at *8; *Ortiz*, 2011 WL 4952979, at *2-4 ; *Shaterian*, 2011 WL 2314151, at *4, n.8; *Mabry,* 185 Cal. App. 4th at 230.

### B.   Plaintiff Has Sufficiently Stated a Claim for Violation of the HBOR

The California Home Owner's Bill of Rights ("HBOR") "provides protections for homeowners facing foreclosure...  [i]ts purpose is to ensure that homeowners are

-10-

considered for, and have a meaningful opportunity to obtain, available loss mitigation options such as loan modifications or other alternatives to foreclosure." *Rijhwani*, 2014 WL 890016, at *8. Specifically, the HBOR prohibits the practice commonly known as "dual tracking," whereby financial institutions continue to pursue foreclosure while evaluating a borrower's loan modification application. *See Jolley v. Chase Home Finance, LLC,* 213 Cal. App. 4th 872, 904 (2013).

Section 2923.6 of the HBOR provides, in relevant part: "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent to record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending" … and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification. Cal. Civ. Code § 2923.6(c). If a borrower is denied a first lien loan modification, the servicer must provide the reasons for the denial, and "[i]f applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. Cal. Civ. Code § 2923.6(f).

Although Defendant confirmed that Plaintiff's loan modification application had been received and was in review, on June 9, 2014, while the application was pending it "dual tracked" Plaintiff by filing a Notice of Trustee's Sale against the Property. Despite Defendant's representations that it wanted to "help [Plaintiff] through the process," Defendant was taking the necessary steps to conduct a trustee's sale, including filing foreclosure instruments against Plaintiff's Property in direct violation of the HBOR.

Defendant next denied Plaintiff for a "proprietary step rate program" however, it falsely represented to Plaintiff that it "moved to evaluate [her] for the next available program based on [the] information and the qualifications associated with [her] loan."

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1    In further violation of the HBOR, Defendant failed to provide any information

2    describing the "next available program" or the steps necessary for Plaintiff to be

3    considered for the "next available program," and failed to issue any decision on its

4    purported evaluation of the "next available program."

5        Even after Plaintiff submitted an appeal from in an effort to prompt Defendant to

6    complete its review of her modification application, Defendant merely responded with a

7    generic form letter stating that it after "carefully reviewing the information we currently

8    have," we have determined that you still do not meet the requirements for a loan

9    modification.  To date, Defendant has failed to identify the reasons for denial of the

10   available loss mitigation programs, and continues to advance foreclosure proceedings.

11                    1.    **Defendant's HBOR Violations are Material**

12        California's legislature has specifically outlawed Defendant's wrongful conduct

13   through the HBOR.  Borrowers such as Plaintiff have been given an enumerated right to

14   bring an action to enjoin such violations and/or seek monetary damages.  *See* Cal. Civ.

15   Code § 2924.12.  Defendant's violations of the HBOR are material in that they not only

16   deprive Plaintiff of rights under California law, but deprive Plaintiff of the opportunity

17   to pursue loss mitigation, and ultimately may lead to the loss of her home.

18        Defendant argues that Plaintiff has not sufficiently pled the materiality element of

19   Defendant's HBOR violations.  (Motion, 15:3-16:2).  However, several courts have

20   rejected this argument.  On a motion to dismiss, the court in *Withers v. J.P. Morgan*

21   *Chase Bank N.A.*, No. C 14-0351 SBA, 2014 WL 3418367, at *5 (N.D. Cal. July 11,

22   2014), rejected the servicer's argument that the plaintiff could not establish requisite

23   materiality where he alleged that: (1) the servicer filed notice of trustee's sale while a

24   complete loan modification application was pending, and; (2) it was made clear that

25   foreclosure proceedings would continue despite the violation and pending modification

26   application.  *Id.* (dismissed without prejudice on other grounds).  Such is precisely the

27   case here, as Defendant has refused to provide full and fair loan modification decision

28

-12-

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO**
**DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1   on Plaintiff's pending application, and continues to pursue foreclosure.[3]  *See also Hixon*,

2   2014 WL 3870004 at *6 (court concluded that plaintiff had adequately alleged a

3   material violation of the HBOR where the assigned single points of contact were not

4   knowledgeable about plaintiff's situation and status); *McKinley v. CitiMortgage, Inc.*,

5   No. 13-CV-1057 TLN-CKD, 2014 WL 651917, at *5-7 (E.D. Cal. Feb. 19, 2014) (court

6   issued injunctive relief under the HBOR where plaintiff alleged that a notice of sale had

7   been recorded while a complete loan modification application was pending).

8             **2.     Plaintiff is not Stripped of her Rights under the HBOR Simply**

9                  **Because she is in Default**

10          Defendant contends that Plaintiff cannot suffer harm from the potential loss of her

11  property, as any loss is attributable to Plaintiff's own default.  (Motion, 16:10-15).

12  Given the intent and purpose of the HBOR (to protect homeowners in foreclosure),

13  Defendant's suggestion that Plaintiff's default somehow strips her of rights under the

14  HBOR is illogical and perplexing.  The HBOR is designed to protect those in default

15  from the exact unfair and deceptive practices that Plaintiff has alleged here.

16          As Plaintiff has sufficiently alleged Defendant's repeated violations of the HBOR,

17  Defendant's Motion to Dismiss should be denied.

18          **C.     Plaintiff Has Sufficiently Stated a Claim for Negligent**

19                  **Misrepresentation**

20          "The elements of negligent misrepresentation are (1) the defendant made a false

21  representation; (2) without reasonable grounds for believing it to be true; (3) with the

22  intent to deceive the plaintiff; (4) justifiable reliance on the representation; and (5)

23  resulting harm."  *Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 308 (2014)

24  (finding allegations that defendant misrepresented its intent to permanently modify a

25  loan, then continued with pretext that it was working to finalize the modification

26  sufficient to allege negligent misrepresentation).

27

28  [3] Sale date is currently scheduled for November 12, 2014.  RFJN, Ex. A.

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

1    Defendant contends that it owes Plaintiff no duty of care.  (Motion, 17:1-22).  "As

2    a general rule, a financial institution owes no duty of care to a borrower when the

3    institution's involvement in the loan transaction does not exceed the scope of its

4    conventional role as a mere lender of money."  *Nymark v. Heart Fed. Savings & Loan*

5    *Assn.*, 231 Cal. App. 3d 1089, 1095–1096, (1991).  However, "[e]ven when the lender is

6    acting as a conventional lender, the no-duty rule is only a general rule."  *Alvarez*, 228

7    Cal. App. 4th at 948 (citing *Jolley v. Chase Home Finance, LLC,* 213 Cal .App. 4th 872,

8    901 (2013)).  To answer the question of whether a lender owes such a duty requires the

9    balancing of an in-depth six-factor analysis, known as the '*Biakanja* factors.'"  *Id*.

10   (internal citations omitted).  As articulated in *Nymark*:

11           In California, the test for determining whether a financial
12           institution owes a duty of care to a borrower-client 'involves the
             balancing of various factors among which are (1) the extent to
13           which the transaction was intended to affect the plaintiff, (2) the
             foreseeability of harm to him, (3) the degree of certainty that the
14           plaintiff suffered injury, (4) the closeness of the connection
             between the defendant's conduct and the injury suffered, (5) the
15           moral blame attached to the defendant's conduct, and (6) the
             policy of preventing future harm.' (*Conner v. Great Western Sav.*
16           *& Loan Assn.* (1968) 69 Cal.2d 850, 865, quoting *Biakanja v.*
             *Irving* (1958) 49 Cal.2d 647, 650; *Fox & Carskadon Financial*
17           *Corp. v. San Francisco Fed. Sav. & Loan Assn., supra,* 52
             Cal.App.3d at pp.488-489; cf. *Gray v. Broder, supra,* 109
18           Cal.App.3d at pp.73-74.)

19   *Nymark,* 231 Cal. App. 3d at 1098.  The California Supreme Court precedent cited by

20   the *Nymark* court requires a case-by-case analysis to determine whether a duty of care

21   arises here.

22           **1.    Application of the *Biakanja* Factors Gives Rise to a Duty of Care**

23           Applying the test articulated in *Nymark*, California appellate courts have found

24   the existence of a duty when a lender or servicer mishandles a loan modification

25   application.  *See Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941,

26   948-949 (2014); *Jolley v. Chase Home Finance, LLC,* 213 Cal. App. 4th 827 (2013).  In

27   *Garcia v. Ocwen Loan Servicing, LLC,* 2010 WL 1881098, at *2–3 (N.D.Cal. May 10,

28   2010), the court found that a duty of care arose where lender misplaced documents,

-14-

provided conflicting information, and immediately set a sale date during the loan modification process.  The court addressed the six factors in the context of mishandling documents in the loan modification process, as follows:

> The transaction was unquestionably intended to affect Plaintiff. The decision on Plaintiff's loan modification application would determine whether or not he could keep his home.  The potential harm to Plaintiff from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep his home was the inevitable outcome.  Although there was no guarantee the modification would be granted had the loan been properly processed, the mishandling of the documents deprived Plaintiff of the possibility of obtaining the requested relief.  The injury to Plaintiff is certain, in that he lost the opportunity of obtaining a loan modification and application his home was sold.  There is a close connection between Defendant's conduct and any injury actually suffered, because, to the extent Plaintiff otherwise qualified and would have been granted a modification, Defendant's conduct in misdirecting the papers submitted by Plaintiff directly precluded the loan modification application from being timely processed.  The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis.

*Garcia v. Ocwen Loan Servicing, LLC,* 2010 WL 1881098, at *2–3 (N.D.Cal. May 10, 2010).

The recent California appellate decision, *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941 (2014) adopted the reasoning in *Garcia*, concluding that the "***Biakanja* factors weigh in favor of imposing a duty of care on a lender that undertakes to review a loan for potential modification**."  *Alvarez*, at 948.  In *Alvarez*, the plaintiffs alleged that defendants owed them a duty to exercise reasonable care in review of their modification applications once they agreed to consider them.  They alleged that the defendants "breached this duty by (1) failing to review plaintiffs' applications in a timely manner, (2) foreclosing on plaintiffs' properties while they were

-15-

under consideration for a HAMP modification and (3) mishandling plaintiffs' applications by relying on incorrect information." *Id*. at 945. The *Alvarez* court stated:

> We find the Garcia court's reasoning persuasive and applicable to the facts alleged in the present case. Here, **because defendants allegedly agreed to consider modification of the plaintiffs' loans, the *Biakanja* factors clearly weigh in favor of a duty. The transaction was intended to affect the plaintiffs and it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to the applicants**.

*Id.* at 948.

Te appellate court in *Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299 (2014) rejected bank defendant's argument that there is no duty not to misrepresent the truth in the context of loan modification negotiations. *Id.* at 308-09 (finding that lenders do not have a free pass to misrepresent important facts with impunity when they negotiate loan modifications). Indeed, lenders have a common law duty to avoid making misleading representations of material facts. *Id.* at 309 (citing *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*, 196 Cal. App. 4th 1572-73 (2011).

Here, Defendant made a series of false and negligent misrepresentations to Plaintiff when it:

- advised Plaintiff on June 4, 2014 that she had until August 24, 2014 to provide further financial documentation in support of her loan modification, yet instead filed a Notice of Trustee on June 9, 2014, intent on moving forward with foreclosure;
- advised Plaintiff that it had evaluated her for its available modification program(s), when it never in fact did so;
- after Plaintiff put Defendant on notice that it had failed to render a decision as to its available modification programs, it falsely advised Plaintiff that it had "carefully reviewed the information" it had, and that she "still" did not meet the requirements for a loan modification.   (FAC, ¶32).

-16-

1   Not only did Defendant never perform an evaluation for its "available modification

2   program(s)," it certainly did not conduct a "careful review" of any purported previous

3   determination.  (FAC, ¶33).  Instead, Defendant sent a generic form denial letter to

4   enable it to move swiftly forward with foreclosure.  Defendant made these

5   misrepresentations without any grounds for believing it would actually provide Plaintiff

6   with a full and fair opportunity to be reviewed for a modification.  Instead, Defendant

7   led Plaintiff to believe she would be provided with a fair evaluation, and moved swiftly

8   forward with its attempt to foreclose.  Plaintiff has sufficiently pled negligent

9   misrepresentation.

10      **D.**      **Plaintiff Has Sufficiently Stated a Claim for Violation of Business &**

11              **Professions Code Section 17200**

12          The UCL is codified in California Business and Professions Code section 17200

13   ("Section 17200').  The UCL prohibits any unlawful, unfair, or fraudulent business

14   practice.  The UCL is written in the disjunctive, which means a business act or practice

15   can be alleged to be any or all of the three prongs.  *Berryman v. Merit Property*

16   *Management, Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

17          To state a claim for fraudulent business practice under the UCL, a plaintiff does

18   not need to establish the elements of common law fraud; rather a plaintiff need only

19   demonstrate that the practice "is one that is likely to deceive members of the public."

20   *Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252 (2011).  Defendant's

21   conduct of misrepresenting its intent to review Plaintiff for a modification, failing to

22   provide Plaintiff with any proper review, and then falsely purporting that she was

23   carefully reviewed and denied a modification, establishes a violation of Section 17200

24   in that its actions did in fact deceive Plaintiff and led her to believe she was being given

25   an opportunity to save her home.  Plaintiff submits that Defendant never intended to

26   review Plaintiff for modification or assist her in trying to save her home.  Rather

27   Defendant's goal has been, and continues to be, to keep loans in default and maximize

28   its fees. (FAC, ¶41).

-17-

### 1.    Plaintiff Has Standing Under the UCL

California Business and Professions Code section 17204 requires a person to have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition."  "[I]njury in fact is an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent…"  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (internal citations omitted).  The California Supreme Court has established, "[t]here are innumerable ways in which economic injury from unfair competition may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary."  *Kwikset Corp.,* at 323.

Defendant implies that Plaintiff lacks standing to assert a UCL violation because there is no causal connection between Defendant's conduct and Plaintiff's injury. (Dem., 13:14-24).  Notwithstanding the loss of the opportunity to receive a fair evaluation of her loss mitigation options, Plaintiff's damages under the UCL violation are not limited to the loan modification itself.  Here, Plaintiff has alleged that as a result of Defendant's conduct, Plaintiff: 1) did not seek alternatives to foreclosure (such as sale); (2) was assessed improper interest, late fees, foreclosure fees, and other improper amounts on the Loan; (3) has suffered further damage to her credit; (5) has suffered severe emotional distress; (6) lost the ability to save her home through the modification she was promised; and (8) additional monetary damages.  (FAC, ¶¶16, 37).  Accordingly, Plaintiff's "injury" is sufficiently pled and Defendant's standing argument is without merit.

1   **V.      <u>CONCLUSION</u>**

2          Pursuant to the foregoing, Plaintiff respectfully requests this Court deny

3   Defendant's Motion to Dismiss in its entirety, allowing all of Plaintiff's causes of action

4   to proceed to the discovery process.

5

6   November 3, 2014                       **BERGMAN & GUTIERREZ LLP**

7

8                                  By:   <u>   */s/ Amanda L. Gray*               </u>

9                                         Penelope P. Bergman
                                          Deborah P. Gutierrez
10                                        Amanda L. Gray
                                          Attorneys for Plaintiff,
11                                        Adrienne Akinsete

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT WELLS FARGO BANK N.A.'S MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## Certificate of Service

I, Amanda L. Gray, attorney of record in this matter, hereby certify that on November 3, 2014, in accordance with the registered case participants and in accordance with the procedures set forth at the United States District Court, Northern District of California, service of a true and correct copy of this document was accomplished pursuant to ECF electronic delivery.

By:    */s/ Amanda L. Gray*
       Amanda L. Gray